UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In the Matter of:

Case No. 15-51011

Oakland Physicians Medical Center,
L.L.C. d/b/a/ Doctors' Hospital of
Michigan, a Michigan limited liability company,

Chapter 11
Hon. Maria L. Oxholm

      Debtor

_____/

Basil T. Simon, not individually but solely
in his capacity as the Liquidation Trustee of
Oakland Physicians Medical Center, LLC,
Liquidation Trust,

      Plaintiff,

Adv. Proc. No. 16-05125

v.

Michael Short,

      Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION OF THE COURT'S ORDER GRANTING PARTIAL SUMMARY
JUDGMENT AS TO COUNT II OF PLAINTIFF'S COMPLAINT**

I. INTRODUCTION

Before the Court is Defendant Michael Short's ("Defendant") Motion for

Reconsideration of the Court's Order Regarding Liquidation Trustee, Basil T. Simon's

("Trustee") Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary

Judgment as to Count II of Plaintiff's Complaint (ECF No. 122). Count II of Trustee's adversary

complaint seeks to avoid and recover, pursuant to 11 U.S.C. §§547(b), 550(a) and 551, three

transfers dated July 2, 15 and 17, 2015 in the amount of $100,000.00 made by the debtor

Oakland Physicians Medical Center L.L.C. ("Debtor" or "Hospital") to the Defendant within ninety days preceding the Hospital's bankruptcy filing.[1] Trustee and Defendant filed cross motions for partial summary judgment of the preference count (Count II). The parties argued their respective motions on March 8, 2018. The Court granted Trustee's motion as to Count II in the amount of $100,000.00 and denied Defendant's motion. (ECF No. 122). Defendant brings this motion pursuant to Fed. R. Bankr. P. 9024 and 7054(b).

In his motion for reconsideration, Defendant argues that it was an error and a palpable defect for the Court to determine that Defendant failed to establish that there is a genuine issue of material fact as to the second element of 11 U.S.C. §547(c)(2) because in order for Trustee to be entitled to summary judgment, Trustee was required to establish that there is no genuine issue of material fact as to a necessary element of §547(c)(2). Defendant claims that Trustee did not sustain his burden as to the second element of §547(c)(2) and the Court did not make a finding that Trustee met his burden, further claiming that the issue was not discussed by the parties or by the Court. In the alternative, Defendant argues that he established the existence of a genuine issue of material fact as to the second element of §547(c)(2).

After reviewing the entire record, the Court finds that Defendant failed to establish that a palpable defect has occurred by which the Court and the parties have been misled, and that a different disposition of the case must result from a correction of the defect. Consequently,

---

[1] Trustee's adversary complaint alleged the following counts:

- Count I – Claim for Re-Characterization of any Advances by the Defendant;
- Count II – Preferential Transfers - §§ 547(b), 550(a) and 551;
- Count III – Fraudulent Transfers - §§548(a)(1)(A), 548(a)(1)(B), 550 and 551;
- Count IV – Avoidance of Fraudulent Transfers under Michigan's Uniform Fraudulent Transfer Act, MCL §§566.31 et seq, and §§544(b) and 550;
- Count V – Breach of Statutory Duties to Act in Good Faith and In the Best Interests of the Company;
- Count VI – Equitable Subordination of Claims;
- Count VII – Claim Disallowance §502(d).

(ECF No. 23, First Amended Complaint).

Defendant is not entitled to relief pursuant to Bankruptcy Rule 9024. The Court additionally finds that Defendant is not entitled to relief under Rule 54(b).

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §157. This adversary proceeding seeks to avoid and recover preferences and therefore is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(F).

## III. APPLICABLE STANDARDS

### A. Local Bankruptcy Rule 9024 Standard

Local Bankruptcy Rule 9024-1(a)(3) sets forth the criteria to apply in a motion for reconsideration. This rule provides that a motion for reconsideration that merely presents the same issues ruled upon by the Court, either expressly or by reasonable implication, will not be granted. L.B.R. 9024-1(a)(3). The rule further provides that the moving party must demonstrate that a palpable defect has occurred by which the Court and the parties have been misled, and that a different disposition of the case must result from a correction of the defect. *Id*. "To establish a 'palpable defect,' the moving party generally must point to '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *In re Collins & Aikman Corp.,* 417 B.R. 449, 454 (E.D. Mich. 2009).

### B. Rule 54(b) Standard

Fed. R. Civ. P. 54(b) provides,

**(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be

3

revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54

"Rule 54(b) was designed to facilitate the entry of an order of final judgment in a multi-claim/multi-party action where the parties demonstrated a need for making review available on some of the claims or parties before entry of final judgment as to all." *Coal. for Equitable Minority Participation in Architectural Contracts in Tennessee (COMPACT) v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 786 F.2d 227, 230 (6th Cir. 1986) (internal citation omitted). While, "[s]ound judicial administration warrants allowing appeal on some claims or parties before the entire case is finally adjudicated, . . . it does not warrant blurring the concept of finality as to a single claim or as to one party." *Id.* The rule is to "be invoked only in the 'infrequent harsh case.'" *Id.* (internal quotation omitted).

<u>C. Rule 56 Standard</u>

Fed. R. Civ. P. 56, incorporated by Fed. R. Bankr. P. 7056 provides that

summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2509–10 (1986). "[S]ubstantive law will identify which facts are material[; and o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S. Ct. at 2510. Moreover, the disputed material fact must be "genuine." *Id.* "[A] material fact is 'genuine,' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The rule "mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2552. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324. Thereafter, "the nonmoving party [has] to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id*.

## IV. BACKGROUND

The Debtor was formed in 2008 to acquire the assets of Pontiac General Hospital in a sale pursuant to 11 U.S.C. §363. Debtor's members, who at the time consisted of approximately 45 physicians and McLaren Health Care ("McLaren"), invested millions of dollars into Debtor. Defendant was a member-physician at the Hospital. In 2010, McLaren disassociated itself from the Hospital and demanded repayment of its secured loan. The member-physicians made loans/advances to Debtor to enable it to pay off the debt owed to McLaren and to later finance Debtor's revival.

Despite these efforts, Debtor suffered losses between 2010 and 2015 and required continued cash advances from its members in order to continue its operations. Between November 1, 2011 and July 1, 2015, Defendant claims to have made 19 loans to Debtor totaling $1,582,333.34. It appears of that amount, $572,000.00 was repaid to Defendant. According to Debtor's Loan Summary, as of December 31, 2015, the member-physicians' loan balances are $6,502,609.40; $924,903.76 of which is the balance owed to Defendant.

The subject of the preference motions is a short-term, no interest loan in the amount of $100,000.00 made by Defendant to Debtor on June 29, 2015 ("2015 Loan"). There was no promissory note or any type of written agreement accompanying this loan. The loan was repaid within 30 days, by the following transfers:

> 7-15-15 Check#125620 in the amount of $35,000
> 7-17-15 Check#125624 in the amount of $35,000
> 7-2-15 Wire Transfer in the amount of $30,000

(ECF No. 89-5; Ponczocha Letter).

On July 22, 2015, Debtor filed a voluntary petition for relief under Chapter 11. Defendant filed a proof of claim in the amount of $952,377.80. On December 14, 2016, Trustee filed this adversary complaint. The central dispute in this adversary proceeding is whether the monies advanced by Defendant were loans or capital contributions. For purposes of Trustee's motion on the preference count, Trustee concedes that the monies are loans, in order to establish the "antecedent debt" requirement of §547(b)(2).

## V. APPLICATION

The Court has reviewed the entire record and finds that the Defendant has failed to establish that a palpable defect has occurred by which the Court and the parties have been misled, and that a different disposition of the case must result from a correction of the defect. A review of the record confirms that the Court is in agreement with the Defendant as to the proper standard for Rule 56. Possible confusion as to whether the initial movant met his burden may have arisen due to the fact that the Court considered cross-motions for partial summary judgment with the Defendant—who has the burden of proof on his affirmative defense at trial—arguing his motion first. However, the Court disagrees that Trustee failed to meet his burden as to the second element of §547(c)(2) or that this issue was not discussed or decided. The Court further disagrees that Defendant established a genuine issue of material fact for trial as to this second element. The Court will first provide the applicable law for the "ordinary course of business" defense and summarize its findings before addressing Defendant's numerous arguments.

### A. "Ordinary Course of Business" Defense and the Court's Ruling on Cross Motions for Partial Summary Judgment

Section 547(b) provides,

**(b)** Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
    **(1)** to or for the benefit of a creditor;
    **(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;
    **(3)** made while the debtor was insolvent;
    **(4)** made--
        **(A)** on or within 90 days before the date of the filing of the petition; or
        **(B)** between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    **(5)** that enables such creditor to receive more than such creditor would receive if--
        **(A)** the case were a case under chapter 7 of this title;

7

**(B)** the transfer had not been made; and
**(C)** such creditor received payment of such debt to the extent provided by the provisions of this title.

§ 547(b).  Section 547(c)(2) provides,

**(c)** The trustee may not avoid under this section a transfer--
**(2)** to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
**(A)** made in the ordinary course of business or financial affairs of the debtor and the transferee; or
**(B)** made according to ordinary business terms;

*Id*.

"[T]he trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."  §547(g).  For purposes of this motion, the parties agreed that the elements of §547(b) had been established.

The issue before the Court in both cross-motions is the applicability of any claimed defenses; specifically, the "ordinary course of business" defense of § 547(c)(2).  The terms "ordinary course of business" and "ordinary business terms" are not defined in the Bankruptcy Code.  *Waldschmidt v. Ranier* (*In re Fulghum Const. Corp.)*, 872 F.2d 739, 742–43 (6th Cir. 1989).[2]  The Sixth Circuit in *In re Fulghum*, provided:

However, subsequent case law is in agreement that this section was intended to "protect recurring, customary credit transactions which are ***incurred and paid*** in the ordinary course of business of the Debtor and the transferee."  . . .  Congress enacted § 547(c)(2) "to leave undisturbed normal financial relations, because they do not detract from the general policy of the preference section to discourage unusual action by either the debtor or creditors during the debtor's slide into bankruptcy."

---

[2] Analyzing pre-BAPCPA version of §547(c)(2).

*Id.* at 742–43 (emphasis added) (internal citations omitted). Notwithstanding these standards, the Sixth Circuit in *In re Fulghum* stressed that "there is no precise legal test which can be applied; rather, this court must engage in a "peculiarly factual" analysis." *Id.* (internal citations omitted).

*In re Fulghum* explained,

> The focus of this court's inquiry must be directed to an analysis of the business practices which were unique to the particular parties under consideration and not to the practices which generally prevailed in the industry of the parties. . . . Even if the debtor's business transactions were irregular, they may be considered "ordinary" for purposes of § 547(c)(2) if those transactions were consistent with the course of dealings between the particular parties.

*Id.* at 743 (internal citations omitted). Accordingly, to meet his burden under §547(c)(2), Defendant must prove both elements, (1) that the debt paid by the July 2, 15, and 17, 2015 transfers was a debt incurred by the Debtor in the "ordinary course of business or financial affairs" of the Debtor and the Defendant; and (2) the July transfers were either (A) "made in the ordinary course of business or financial affairs" of the Debtor and the Defendant, or (B) made according to "ordinary business terms."

The first element examines the debts incurred and whether "the debts were incurred in the routine operations of [the Debtor] and [the Creditor], then they can be said to have been incurred in the ordinary course of each party's business." *Madden v. Morelli* (*In re Energy Conversion Devices, Inc.*), 548 B.R. 208, 235 (Bankr. E.D. Mich. 2016) (internal citations omitted). Here, Defendant mainly presented evidence showing that Defendant along with other member-doctors routinely made loans to Debtor which were necessary for Debtor's operations, and that they did so in a good faith belief that the hospital had great potential and was otherwise unable to obtain a line of credit elsewhere. (ECF No. 135, Hr'g Tr. March 15, 2018, 10). This evidence included Defendant's deposition (ECF No. 95-1, Exhibit A, 45-46); Dr. Yatinder Singhal's deposition

(ECF No. 95-3, Exhibit C, 30); Defendant's declaration (ECF No. 89-5, Exhibit 5, paras 12, 18, 19, 21); and the Loan Summary spreadsheet (ECF 89-6, Exhibit 6-1).

Nonetheless, in order to determine whether the 2015 Loan was incurred in the routine operations of the Debtor and Defendant, it is necessary for the Court to consider the general lending practice between the parties. Evidence before the Court showed that the terms and conditions of the loans varied. According to the Defendant, except for the 2015 Loan, the doctors were always given a promissory note; and other than a July 2, 2012 note, the promissory notes were signed. (Exhibit A to Pl's Mot., 50-53). And finally, Defendant did not have possession of the notes. (Exhibit A to Pl's Mot., 50-53).

As to the 2015 Loan, Defendant testified,

I think, was more like a handshake loan because the hospital was in the severe cash flow crunch and it was about to bounce some checks for payroll and taxes and so Mukul talked to me about it and he said it was a –I said are you sure this is a cash flow problem or is this a budgetary problem because if it's a budgetary problem, I'm not going to be doing anything, which is face the facts at the moment, and he said no, this is a cash flow problem -- …. Cash would be coming in in a couple of weeks and they promised to pay me back and I said okay, fine.

(Exhibit A to Pl's Mot., 50-51). Defendant further testified that,

[I]t was the only one I ever did. … It was intended to cover payroll and the taxes and specifically for that, not for other obligations that the hospital had but it was a cash flow issue and I remember looking at the projections for when the cash would come in so that I would get reimbursed in a rapid manner and that's what I was promised and that's what the hospital did. If it was something that could not be managed on a budgetary issue and it wasn't a cash flow, then I wouldn't have done it.

(Exhibit A to Pl's Mot., 89). Defendant later clarified in his declaration,

The 2015 Loan was different from other loans made by me to the Hospital in that it was represented to me by Mr. Kumar, the Hospital's CEO and CFO, that it would be repaid with specific funds expected to be received by the Hospital from the insurance companies and/or CMS in the course of one billing cycle.

(Exhibit 5, Para 23).

Based on the evidence, the Court determined that a genuine issue of material fact existed on whether this 2015 Loan was incurred in the "ordinary course of business." (Hr'g Tr. March 15, 2018, 17). The Court specifically found,

> There is evidence that this Debtor has experienced financial struggles for years and that borrowing money from the doctors for emergencies such as payroll was routine. However, it is not clear what Defendant meant by the statement "that was the only one that I ever did." Defendant testified that this was the only handshake loan, that there was a severe cash flow crunch, and that he would be reimbursed in a rapid manner from a defined source. Furthermore, unlike other loans made by the Defendant, this loan was interest free.
>
> Defendant has not presented any evidence to show that Defendant's other loans to Debtor were made under similar circumstances and terms. In fact, Defendant testified in his deposition and declaration that he executed a promissory note for all other loans, other loans had varied interest, and that he was only repaid for some of the loans. There is no evidence in the record that Defendant obtained an equivalent assurance from the Debtor of a prompt repayment from a specific source. Another important factor in the Court's consideration is that at the time Defendant made this loan he knew Debtor was going to file for bankruptcy. Oakland Physicians Medical Center, LLC Certificate of Corporate Resolutions by the Board of Directors is dated June 23, 2015, filed in the underlying bankruptcy case (Dkt 7). This approval predated the June 29, 2015 loan. Thus, unlike *Fulgham*, when this particular loan was made Defendant could not have believed that the hospital would be profitable in the near future. As an insider, Defendant had the benefit of the knowledge of the imminent bankruptcy and knew very well that other creditors might not get repaid—thus, prompting Defendant to take additional steps to guarantee his repayment. For these reasons, there is a genuine issue of material fact on this first prong.

(Hr'g Tr. March 15, 2018, 17-18).

At issue is the second element of the affirmative defense, which focuses on the transfer, and whether it was made in the "ordinary course of business or financial affairs" of Debtor and Defendant, or made according to "ordinary business terms." Defendant limited his argument to the application of 547(c)(2)(A), which involves a subjective inquiry into the parties' dealings.

There are many facts to consider in determining "whether a transfer meets the subjective component of being made in the ordinary course of business or financial affairs of a debtor and

transferee." *Simon v. Gerdau MacSteel, Inc. (In re Am. Camshaft Specialties, Inc.)*, 444 B.R. 347, 363 (Bankr. E.D. Mich. 2011). *In re Am. Camshaft Specialties, Inc.* summarized some factors discussed by the Sixth Circuit in *Frank v. Volvo Penta of the Americas, Inc. (In re Thompson Boat Co.),* No. 97–1190, 1999 WL 133280 (6th Cir. Feb.25, 1999) (unpublished). These include, (1) Any changes in the timing of the payments; (2) Any change in the method of payment; (3) Unusual collection activity during the preference period; and (4) Unusual amounts of payments. *In re Am. Camshaft Specialties, Inc.*, at 354. The first and most important factor is the timing of the payments. The Court must look at the payments made in the preferential period and compare them to past practices of the parties. Because Defendant is an insider the preferential look back period is one year. Additionally, due to his insider status, the transactions and the relationship of the parties are subject to careful scrutiny. *In re Babcock Dairy Co. of Ohio, Inc.,* 70 B.R. 657, 660 (Bankr. N.D. Ohio 1986).

Here the Court concluded as follows,

> [T]he Court is unable to make a comparison because the Defendant failed to establish the parties' past practice with respect to the terms of repayment of the loans. In support of his position, Defendant pointed to copies of unsigned promissory notes, the Loan Summary, one signed promissory note (which is an on demand note with no maturity date), and Exhibits A and B to Plaintiff's amended complaint. However, Defendant failed to link the past repayments to their respective loans to demonstrate the repayment history. None of the evidence relied on by the Defendant is helpful on this point.

(Hr'g Tr. March 15, 2018, 24). The Court explained,

> By way of example, exhibits A and B to Plaintiff's amended complaint merely show a list of loans by date issued and a separate list of repayments listed by the repayment date. There is no information given that would reflect what the repayment amounts are for or to which loan they correlate. For instance, from November 1, 2011 to February 13, 2013, Defendant issued six separate loans totaling $764,000.00. The first repayment was April 1, 2013 for $204,000.00. This timing reflects that more than 30 days transpired between any loans and the repayment. Thereafter, on April 15, 2013, Defendant made two separate loans for $150,000.00 each, on April 16, 2013 is a repayment of $35,250.56. And so on for

a total of 19 separate loans in the amount of $1,582,333.34 and 23 repayments totaling $571,939.44. It is impossible for the Court to ascertain the average time frame of repayment for these parties. In fact, some of the loans have not been repaid. Defendant testified that he was only repaid for some of the loans. Dr. Singhal testified that

> "It was not just that if anybody wants to get the money back, they'll get it. It will be discussed with CEO, CFO and the other board members. It will not be anything special for some member or the other member. In our mind and including Dr. Jolly's mind we knew that the situation is that we may not get the loans back."

(Singhal dep. pg. 32). Moreover, while Exhibit B lists or calls these amounts repayments, it is unclear whether any of these amounts include payment of board or director fees. Ms. Feighner testified in her deposition that she created a document for repayments, interest, board fees, director fees, C&H fees and amounts that were paid through payroll to Dr. Short. Pg. 32.

It is evident from the record that Defendant is still owed $924,903.76. Thus, unlike *Fulghum* and *Camshaft*, the July 2015 repayment is a substantial deviation from the parties' prior history which includes no repayment. . . .

Accordingly, the Court finds that the Defendant failed to establish that the repayment of the 2015 Loan during the preference period was consistent with the past practice of the parties. In fact, Defendant testified that this was a rapid repayment from an identified source making Defendant comfortable enough to make this loan without executing a promissory note.

When asked during [the March 8, 2018 hearing] whether Defendant's counsel has linked the repayments with the loans, Defendant's counsel indicated that he has not and further that he does not need to for this defense relying mainly on the policy arguments articulated in *Fulghum*.

(Hr'g Tr. March 15, 2018, 24-26). As to the remaining factors, the Court found that there was no substantial change in the method of payment. All previous loan repayments to the Defendant were made by check. The 2015 Loan repayment was received in three separate payments, two by check and one via wire transfer. (Hr'g Tr. March 15, 2018, 27). Furthermore, the parties conceded that there is no evidence of unusual collection activity during the preference period. (Hr'g Tr. March 15, 2018, 27). Lastly, no evidence or arguments were presented with regard to these transfers being in unusual amounts. (Hr'g Tr. March 15, 2018, 27).

Accordingly, after considering all of the factors and policy considerations, the Court found that Defendant failed to satisfy his burden to either establish or create a genuine issue of material fact on the second element. (Hr'g Tr. March 15, 2018, 27). After further consideration, the Court concludes that Defendant failed to establish that a palpable defect has occurred.

### B. Defendant's Arguments

#### i. Whether Trustee met his initial burden under Rule 56?

Defendant claims that the Court never ruled that Trustee met his burden of establishing that there is no genuine issue of material fact as to the second element of § 547(c)(2); in fact, Defendant further maintains that the issue was not discussed by the parties or by the Court. Specifically, Defendant is of the opinion that Trustee merely presented the following arguments in his motion for partial summary judgment: "i) that the elements of § 547(b) were established; and ii) that Dr. Short has the burden of proof as to the elements of the ordinary-course-of-business defense and that he could not do so because he: (a) had not previously made the same 'type' of loan; (b) is a medical doctor and therefore not in the business of making loans; and (c) that there were no specific terms of repayment." (ECF No. 125, 3).

During the March 8, 2018 hearing, Defendant argued his Motion for Partial Summary Judgment as to Count II of Plaintiff's Complaint. As the moving party seeking summary judgment in his favor on the "ordinary course of business" exception, Defendant "bears both the initial burden of fact above, but also the burden of demonstrating by a preponderance of the evidence that the legal theory in question is applicable." *Speco Corp., v. Canton Drop Forge, Inc. (In re Speco Corp.),* 218 B.R. 390, 396-97 (1998). For the reasons discussed, the Court found that the evidence offered by the Defendant failed to establish that the 2015 Loan was repaid according to the "ordinary course of business" of the parties. Because the repayment of

the 2015 Loan was a substantial deviation from the parties' history of dealings, the repayment is outside the scope of the "ordinary course of business" exception as a matter of law. This lack of proof was also the ultimate reason for Defendant's failure to survive Trustee's Motion for Partial Summary Judgment.

In Trustee's motion, contrary to Defendant's assertion, Trustee did not simply rely on establishing the elements of § 547(b) to show that the payments at issue were not made in the ordinary course of business. A trustee challenging the legal sufficiency of an affirmative defense, on which the defendant bears the burden of proof at trial, on a summary judgment motion,

> 'may satisfy its Rule 56 burden by showing "that there is an absence of evidence to support [an essential element of] the [non-moving party's] case." ' " . . . Conversely, "[w]hen relying on an affirmative defense, a defendant who is faced with a summary judgment motion has the same burden as a plaintiff against whom a defendant seeks summary judgment. That burden requires that the non-moving party with the burden of proof on the issue in question produce sufficient evidence upon which a jury could return a verdict favorable to the nonmoving party.". . .

*In re Wallace's Bookstores, Inc*., 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004) (internal citations omitted).

In his motion, Trustee argued in relevant part that there is no evidence of an obligation by Debtor to repay Defendant, specifically pointing out that there is no evidence regarding the terms of the loans. (Trustee Brief, 4-5). Trustee emphasized that Defendant could not state any specific terms for repayment and has not kept any of the promissory notes. (Trustee Brief, 4-5). Trustee further pointed to Defendant's declaration wherein he stated "'I did not make decisions on the Debtor as to when and in what amounts loan repayments would be made to me or anyone else. Rather the Debtor's administrative staff, which was headed by the Debtor's CEO, managed the Debtor's finances and made those determinations.' (Short Declaration, para 32)." (Trustee

Brief, 5). Trustee additionally relied on Dr. Yatinder Singhal's deposition, in which he "testified that any payments to Defendant or the other Board members were optional. . . . 'It was not just that if anybody wants to get their money back, they'll get it. It will be discussed with CEO, CFO and the other board members.' . . . (Singhal Dep), p. 32)." (Trustee Brief, 5-6). Therefore, Trustee maintained that " Debtor could have decided not to pay anything to Defendant and that arrangement would have been acceptable according to the deposition testimony of Defendant and Dr. Singhal and the statements of Defendant in the Short Declaration." (Trustee Brief, 19). Thus, Trustee argued that because Defendant was not in the business of making loans and could not offer any specific terms for repayment, he could not satisfy his burden of proof on this element of the affirmative defense. (Trustee Brief, 15).

During the March 8, 2018 hearing, Trustee also explained the insufficiency of the unsigned promissory notes,

> The notes were primarily demand notes. They don't show -- and the records do not show necessarily which repayments that we allege were fraudulent conveyances were for interest, principal, or that they were paid pursuant to any particular note and whether the notes were long term or short term because they were demand notes, and there were no terms.

(ECF No. 137, Hr'g Tr. March 8, 2018, 48). With regard to the 2015 Loan, Trustee argued that

> [Defendant] says it was paid back as agreed. I don't know what -- I don't know what the terms of that loan is [*sic*]. All we know is that assuming that -- assuming that the way he was paid back was how he was to be paid back, then those are the, quote, unquote, terms. And I don't think he can demonstrate another loan where he advanced a hundred thousand dollars to an insolvent debtor and was repaid two weeks later on that particular loan without a note, without -- he can't even identify what the terms of that loan were, and it was a handshake deal immediately prior to the filing of the bankruptcy.

(Hr'g Tr. March 8, 2018, 52-53).

Trustee's arguments were sufficient to demonstrate that an essential element of the Defendant's affirmative defense is lacking. Trustee supported his motion by citing to and

challenging the sufficiency of the evidence offered by Defendant. The burden of proof thus shifted to Defendant to produce sufficient evidence upon which a jury could return a verdict favorable to him.

Defendant also raises for the first time the "ordinary business terms" objective test of §547(c)(2) in this motion for reconsideration. Defendant additionally asserts that Trustee failed to explain how any of his three factual allegations would preclude the satisfaction of the elements of § 547(c)(2), as none of them address the objective test of "ordinary business terms." The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendment to § 547(c)(2) no longer requires a transferee to show that the transfer meets both the subjective and objective components. See *In re Am. Camshaft Specialties, Inc.,* 444 B.R. at 352.[3] Defendant raised both the subjective and objective test as his affirmative defenses in his Answer to Trustee's First Amended Complaint; however, Defendant did not raise or rely on the objective test during the summary judgment stage. "Motions for reconsideration . . . should not be used by the parties to 'raise arguments which could, and should, have been made before judgment issued.'" *In re Grady*, 417 B.R. 4, 6 (Bankr. W.D. Mich. Sept. 29, 2009) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

---

[3] *In re Am. Camshaft Specialties, Inc.* explained,

> The change made by BAPCPA to § 547(c)(2) of the Bankruptcy Code is that it is no longer necessary for a transferee to show that the transfer meets *both* the subjective component and the objective component. BAPCPA removed the conjunctive "and" and replaced it with the disjunctive "or" between the subjective component and the objective component in the text of § 547(c)(2) of the Bankruptcy Code that deals with the transfer. Now, post-BAPCPA, a party can prevail under § 547(c)(2) of the Bankruptcy Code by demonstrating that the *debt* that was paid by the transfer was incurred by the debtor and the transferee in the ordinary course of their business or financial affairs, and that the *transfer* (i.e., the payment) was *either* made in the ordinary course of business or financial affairs of the parties (the subjective component) under § 547(c)(2)(A) *or* that it was made according to ordinary business terms (the objective component) under § 547(c)(2)(B).

*Id.* at 353.

*ii. Whether Defendant met his burden under Rule 56 and established
the existence of a genuine issue of material fact?*

Even if Trustee met his initial burden under Rule 56, Defendant contends that he refuted Trustee's arguments. Here, Defendant is pointing to the same evidence he relied on previously in a second attempt to show a genuine issue of material fact. However, for those same reasons the Court stated on the record on March 15, 2018, when it gave its bench opinion, this evidence viewed in the light most favorable to Defendant is insufficient to survive summary judgment.

Specifically, Defendant points to his declaration and deposition testimony. He claims that,

> He clarified in his declaration (Docket 89-5, ¶ 23) what was meant by his statement that he had not previously made a loan exactly like the 2015 Loan. (The difference was that the loan would be repaid with specific funds expected to be received from specific sources in the course of one billing cycle.)

> His deposition testimony also provided clarification of that statement. Dr. Short stated in his declaration (¶ 20) that he had made 19 loans to the Debtor and that it was indeed ordinary for him (and other doctor/members) to lend to the Debtor.

(ECF No. 125, Def's Brief, 5).

None of this evidence refutes Trustee's allegations; rather, this evidence is relevant for the first element of the "ordinary course of business" defense--which the Court agreed creates a genuine issue of material fact as to that element. Defendant fails to appreciate that this evidence is irrelevant to the issue of whether the repayment was made in the ordinary course of business.

Defendant also points to the Loan Summary and signed and unsigned promissory notes claiming that (1) the Loan Summary shows the terms of dozens of loans to Debtor totaling millions of dollars; and (2) the signed and unsigned promissory notes "correspond to entries on the Loan Summary and reflect terms of a number of loans." (Def's Brief, 5). Defendant further argues that, "He stated in his declaration (¶¶ 23-29) that there were specific terms for repayment

of the 2015 Loan, and he explained those terms (payment without interest within the upcoming payment cycle)." (Def.'s Brief, 5-6). Defendant reasons that,

> because the 2015 Loan was a short-term loan made for a specific business purpose, including the coverage of payroll, and was repaid precisely as agreed — from accounts receivable expected to be received within the payment cycle— repayment of the 2015 Loan was made according to ordinary business terms, or in the ordinary course of business of the Debtor and Dr. Short. He supported this argument with evidence including statements in his declaration (specifically ¶¶ 15-29) and with cases such as *Fulghum Construction* in which the United States Court of Appeals for the Sixth Circuit has made strong policy pronouncements.

(Def.'s Brief, 5).

This evidence likewise is insufficient to create an issue of fact on the second element of the defense. For the reasons fully explained on the record on March 15, 2018, the "Loan Summary," and the signed and unsigned promissory notes do not evidence the terms of repayment. Furthermore, the fact that this 2015 Loan was a short-term loan made for a specific business purpose and paid as agreed does not mean that it was paid according to ordinary business terms. Defendant failed to establish that these terms are the ordinary terms in the parties' course of dealings. The evidence in the record shows otherwise.

During the March 8, 2018 hearing, Defendant was asked repeatedly whether he linked the repayments to their respective loans to establish the parties' repayment history and Defendant indicated that he did not. Further, Defendant maintained that he was not required to do so as he was relying on the policy considerations articulated in *In re Fulghum*. (Hr'g Tr. March 8, 2018, 22, 23, 26, 47, 59, 60).

While Defendant cited to and relied on *In re Camshaft*, he failed to follow it and repeatedly opined that this inquiry should not be a mechanical test. Additionally, Defendant attempted to differentiate *In re Camshaft* by arguing that *In re Camshaft* was a more difficult case in that "It wasn't simply a single payment. It wasn't simply a single loan repaid in a short

term according to the agreed terms. Rather they are complicated series of … payments." (Hr'g Tr. March 8, 2018, 60). This case, likewise, does not consist of a single loan or a single payment. As evidenced by the record, the member-doctors and Debtor have a lengthy history of making loans and receiving payments. Defendant cited to and relied on *In re Camshaft*, which stressed the importance of the temporal proximity analysis between the loans and repayment in considering this defense to a preference. *Camshaft*, 444 B.R. at 355-56.

Even though the Court acknowledged that first time transactions could satisfy §547(c)(2), where the parties have a long history of dealings it is necessary to evaluate that history to establish the "ordinary course of business" that has formed over time, and then compare the transactions at issue to that course of dealings. This is not a mechanical test; rather, it is the relevant inquiry that is dictated by the unique business practices of these particular parties. As *In re Fulghum* explained,

> The focus of this court's inquiry must be directed to an analysis of the business practices which were unique to the particular parties under consideration and not to the practices which generally prevailed in the industry of the parties. . . . Even if the debtor's business transactions were irregular, they may be considered "ordinary" for purposes of § 547(c)(2) if those transactions were consistent with the course of dealings between the particular parties.

*Fulghum*, at 743. Defendant cannot merely rely on policy considerations, but must prove the elements of the defense. *In re Speco Corp.*, 218 B.R. at 397. *In re Speco Corp.* stressed,

> According to the Sixth Circuit, § 547(c)(2) is often seen as "a means of encouraging normal credit transactions and the continuation of short-term credit dealings with troubled debtors so as to stall rather than hasten bankruptcy." *In re Fred Hawes,* 957 F.2d at 243. While the transactions in question appear within the scope of the Sixth Circuit's language above, in order for a payment to be considered excepted from the preferential transfer avoidance powers of § 547 Defendant must still establish that each of the transactions fits squarely within the language of the statute. *Id.* at 244 ("[A] creditor attempting to satisfy § 547(c)(2) must prove all three elements of that subsection.").

*Id*. at 397 (analyzing pre-BAPCPA section 547(c)(2)).

In this case, there is no evidence in the record of any repayment made within 30 days of the loan being made. The Court further indicated in its March 15, 2018 ruling that

> [T]here is even no evidence that at the end of each month the Debtor took whatever money it had and repaid outstanding loans and that this was the customary practice, then the Court would compare the repayments to that customary practice in determining the ordinary course defense. However, there is no such evidence on this record.

(Hr'g Tr., March 15, 2018, 28).

Notably, on March 8, 2018, the Court inquired of counsel whether any of the outstanding discovery related to the preference count. Both parties agreed that discovery was complete with respect to this claim. (Hr'g Tr. March 8, 2018, 76-77). Accordingly, the Court concludes that Defendant failed to satisfy his burden to either establish or create a genuine issue of material fact on the second element.

For these reasons, Defendant failed to establish a palpable defect. First, the Court finds that there was no clear error of law committed by the Court. The Defendant does not argue that there has been an intervening change in the controlling law. Second, the Defendant fails to present any new evidence. Instead, Defendant merely restates the same arguments he already presented and argued during the March 8, 2018 hearing. Finally, Defendant relies on Rule 54(b) in seeking the court to reconsider and amend its ruling absent a palpable defect. Defendant did not specifically argue or cite to any authority warranting such relief under the circumstances of this case. For the same reasons expressed above, the Court declines to amend its Order pursuant to Rule 54(b).

## VI. CONLCUSION

For the foregoing reasons, the motion for reconsideration does not meet the standard of L.B.R. 9024-1(a)(3). It does not identify a palpable defect nor provide any other grounds to reconsider the Order. An amendment of the Court's Order is likewise not warranted under Rule 54(b). Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion for Reconsideration of the Court's Order Regarding Liquidation Trustee, Basil T. Simon's Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Judgment as to Count II of Plaintiff's Complaint (ECF No. 122) is DENIED.

**Signed on June 13, 2018**

/s/ Maria L. Oxholm

**Maria L. Oxholm**
**United States Bankruptcy Judge**